UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>HECTOR RODRIGUEZ CHAVEZ,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 18-CR-5436-GPC<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF Nos. 55 & 65]** |

Defendant Hector Rodriguez Chavez filed a motion seeking reduction of his sentence under 18 U.S.C. § 3582(c)(1). ECF Nos. 55 & 65. The United States opposes. ECF No. 71. For the reasons that follow, Rodriguez's motion is DENIED.

**BACKGROUND**

Rodriguez pleaded guilty to one count of assault on a federal officer and one count of brandishing a firearm during and in relation to a crime of violence. ECF Nos. 35 (superseding indictment); 52 (judgment); *see* ECF No. 65-1 at 6[1] (sentencing hearing transcript). On February 10, 2020, the Court sentenced him to 141 months imprisonment and 3 years of supervised release. ECF No. 52 at 1-3; *see* ECF No. 65-1 at 52. The

---

[1] Page numbers based on CM/ECF pagination.

1

Court emphasized the nature of the crime and Rodriguez's significant criminal history, ECF No. 65-1 at 44-46, including for kidnapping, rape, possession of illegal drugs with intent to sell, and illegal re-entry into the United States, *see* ECF No. 43 at 7–12. At the same hearing, the Court also sentenced Rodriguez for violating the terms of his supervised release in Case No. 19-cr-7011.[2]  *See* ECF No. 65-1 at 3 (case caption).

      Rodriguez is 65 years old and has now served nearly five years of his sentence. ECF No. 65-1 at 76-78.  He has a projected statutory release date of May 3, 2029 and is eligible for release as an elderly offender on January 25, 2027.  *Id.* at 78.  Although the Court recommended that Rodriguez be placed in the Western Region, ECF No. 52 at 2, so that he could remain close to family, *see* ECF No. 65-1 at 49-50, he is currently being housed at FCI Butner Low in North Carolina, *see, e.g.*, ECF No. 65 at 6; ECF No. 65-1 at 64.

      Shortly after his arrest but before sentencing in December 2018, Rodriguez was diagnosed with chronic myeloid leukemia ("CML").  ECF No. 70 at 10 (under seal). Defense Counsel informed the Court at the sentencing hearing that Rodriguez had been diagnosed with leukemia, but Counsel had not been able to obtain any medical documents to support the diagnosis.  ECF No. 65-1 at 9, 34-35.  It was therefore uncertain as to whether the diagnosis was real.  *See id.* at 34, 46.  The Court concluded that, "to the extent that Mr. Rodriguez does have leukemia," the seriousness of the offense and the need to impose a sentence that promotes respect for law outweigh the burden that treating leukemia would place on the prison system.  *Id.* at 46-47.  The Court afforded Rodriguez leniency for his leukemia diagnosis by ordering that three quarters of

---

[2] He was sentenced to 24 months for the supervised release violation, with 18 months to run concurrent to his 141 months in the instant case.  ECF No. 65-1 at 52.  Thus, in addition to the 141-month sentence, he was sentenced to 6 months consecutive for the supervised release violation, totaling 147 months.  *Id.*

his sentence for the supervised release violation (18 months) run concurrent with the instant assault and firearm sentence.  *See id.* at 46-47, 52.

To treat CML, Rodriguez was placed on a daily chemotherapy medication, Imatinib Mesylate.  ECF No. 70 at 2, 10 (under seal).  The medication produced serious side effects, including chronic muscle pain, stiffness in his joints, nausea, stomach pain, and headaches.  ECF No. 70 at 31 (under seal); ECF No. 65 at 13-14.  According to Rodriguez's motion, "[h]e consistently experiences migraines, nausea, night sweats, weakness, heat flashes, sweating, and tiredness."  ECF No. 65 at 11-12.  The pain was so debilitating that it prevented him from getting out of bed sometimes.  *Id.* at 13.  The Mylan brand of the medication caused more serious side effects than his preferred brand, TEVA, but the prison did not always stock TEVA and he was sometimes forced to take Mylan.  ECF No. 70 at 6, 14, 18, 29, 31 (under seal); *id.* at 29 ███████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████ (under seal).

By June 2021 he had achieved molecular remission—meaning that cancerous cells were not detected in a PCR test for CML.  *Id.*  He has been in remission since then.  ECF No. 73 at 2 (under seal).  In June 2023, Rodriguez stopped taking the chemotherapy medication on the recommendation of the Bureau of Prisons ("BOP") oncologist, ECF No. 71 at 3 (under seal); ECF No. 73 at 7 (under seal).  ████████████████ ███████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ (under seal).  If his CML resurges, he will have to start taking Imatinib again.  *Id.*

It is not clear the extent to which Rodriguez's pain and other symptoms have decreased since he stopped taking the chemotherapy medication.  His motion seems to attribute most of his suffering to CML and the chemotherapy medication, ECF No. 65 at 7, 11-14, but his Reply states that "[a]fter stopping the medication, Mr. Rodriguez repeatedly informed the medical staff that he was still experiencing a lot of pain in his neck, bones, muscles, and joints.  The only side effects that have subsided are his dizziness and nausea. . . . The default is for him to feel pain."  ECF No. 78 at 4.  The medical report from August 2023 notes that Rodriguez "states he is doing well overall off of therapy" and does not feel weakness or fatigue.  ECF No. 73 at 2 (under seal).

In addition to CML, "Rodriguez has been diagnosed with high blood pressure (hypertension), high cholesterol (hypercholesterolemia), and hyperlipidemia," and suffers from hemorrhoids.  *See* ECF No. 65 at 12; ECF No. 70 at 34, 38 (under seal).  He takes daily medication for his cholesterol and blood pressure, ECF No. 70 at 38-39 (under seal), but he asserts that he "has not received adequate or reliable medical treatment from the moment he has been in BOP custody, since June 2021," ECF No. 65 at 22; *id.* at 19-23.  At times, he seems to suggest that some of his pain and other symptoms are attributable to these more minor conditions or the medications he takes to treat them.  ECF No. 65 at 12.

On April 6, 2023, the Court accepted as filed Rodriguez's pro se motion for compassionate release.  ECF No. 55.  The Court thereafter appointed counsel to assist Rodriguez in his motion.  ECF No. 61.  On August 30, 2023, Rodriguez, through counsel, filed a renewed emergency motion to reduce his sentence.  ECF No. 65.  On September 15, 2023, the United States filed a response.  ECF No. 71.  On October 28, 2023, Rodriguez filed a reply.  ECF No. 78.

For the reasons that follow, the Court DENIES Rodriguez's motion for a sentence reduction.

## DISCUSSION

### I. Legal Standard

Rodriguez moves for release under 18 U.S.C. § 3582(c)(1), which permits a sentence reduction upon a showing of "extraordinary and compelling reasons" if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and "after considering the [sentencing] factors set forth in section 3553(a)."[3] The question before the Court is therefore whether Rodriguez has demonstrated extraordinary and compelling reasons for a sentence reduction consistent with the Sentencing Guidelines' policy statements. The Court finds he has not.

The policy statements in U.S.S.G. 1B1.13, as amended effective November 1, 2023, provide that extraordinary and compelling reasons include: (1) medical circumstances of the defendant where the defendant suffers from severe or chronic illness "that substantially diminishes the ability of the defendant to provide self-care"; (2) age of the defendant where the defendant is at least 65 years old and has served ten years or 75% of their sentence; (3) family circumstances of the defendant where there is no one other than the defendant to care for a family member; (4) victim of abuse where the defendant has been assaulted in prison by a BOP employee; (5) other reasons of similar gravity, either independently or collectively; and (6) an unusually long sentence.

Prior to the most recent amendments to the Sentencing Guidelines, the Ninth Circuit held that the policy statements were not binding on courts for defendant-brought motions because the policy statements addressed only motions brought by the BOP. *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021). However, the amendments

---

[3] There is also an administrative exhaustion requirement, 18 U.S.C. § 3582(c)(1)(A), but there is no dispute that Rodriguez administratively exhausted, ECF No. 65 at 8 (motion); ECF No. 71 at 5 (government response); ECF No. 65-1 at 54-55 (May 16, 2023 letter to Butner warden).

clarify that the policy statements apply to motions brought by both the BOP and defendants, fixing the issues identified by the Ninth Circuit. *See* U.S.S.G. 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons *or the defendant* . . ." (emphasis added)). This indicates that the policy statements are now binding for both types of motions. *See United States v. Ringgold*, No. cr-17-232, 2023 WL 7410895, at *6 (D. Md. Nov. 8, 2023); 28 U.S.C. § 994(t); *see also id.* § 994(a)(2)(c). As the Ninth Circuit explained:

> A district court's discretion of course has limitations and is first and foremost constrained by any express mandate from Congress. In *Concepcion v. United States*, the Supreme Court recently stated that "[i]t is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained." With regard to § 3582(c)(1)(A) . . . the definition of extraordinary and compelling is bound by applicable policy statements from the Sentencing Commission.

*United States v. Chen*, 48 F.4th 1092, 1095-96 (9th Cir. 2022) (citations omitted).

As such the Court is bound by the policy statements. The relevant section of the policy statements, regarding extraordinary and compelling medical reasons, is as follows:

> (1) Medical Circumstances of the Defendant. --
> . . .
> > (B) The defendant is--
> > > (i) suffering from a serious physical or medical condition,
> > > . . . or
> > > (iii) experiencing deteriorating physical or mental health
> > > because of the aging process,
> > that substantially diminishes the ability of the defendant to provide
> > self-care within the environment of a correctional facility and from
> > which he or she is not expected to recover.
> > (C) The defendant is suffering from a medical condition that requires
> > long-term or specialized medical care that is not being provided and
> > without which the defendant is at risk of serious deterioration in
> > health or death.

U.S.S.G. 1B1.13(b)(1).  The policy statements also require the Court find that "[t]he defendant is not a danger to the safety of any other person or to the community" before granting release.  *Id.* at 1B1.13(a)(2).

## II.  Analysis

Rodriguez argues that his medical conditions—CML, hypertension, high cholesterol, hemorrhoids, and hyperlipidemia, and the side effects of his medications—constitute an extraordinary and compelling reason for compassionate release.  ECF No. 65 at 10-14.  His motion states that he has become largely bedridden, suffers debilitating neck pain, other chronic pain and stiffness, and "consistently experiences migraines, nausea, night sweats, weakness, heat flashes, sweating, and tiredness from a combination of his illnesses and [medications]."  *Id.* at 11-13.  He specifically attributed the neck pain, headaches, fatigue, and nausea to his leukemia medication, both his preferred brand, TEVA, and the brand the BOP sometimes gave him, Mylan.  *Id.* at 13-14.  Rodriguez also contends that his suffering was exacerbated by "the unusually harsh conditions of confinement occasioned by the COVID-19 global pandemic," *id.* at 18, and that those conditions combined with his age of 65, his rehabilitation, and his family support, create an extraordinary and compelling reason for compassionate release.  *Id.* at 14-22.

The government responds that Rodriguez's conditions are not as serious as he portrays them and are well managed by the BOP.  It points out that Rodriguez's leukemia is in remission, he is no longer taking the "medication that appears to have caused much of his discomfort," and his claim of being bedridden is undercut by his plan to work as a truck driver or car salesman upon release.  ECF No. 71 at 7 (citing ECF No. 65 at 27).  Rodriguez replies that "the side effects described in the open[ing] brief *have continued after* [he] stopped taking the leukemia medication."  ECF No. 78 at 3 (emphasis in original).

The Court agrees with the government; their position is better supported by the medical records. *See United States v. Salazar-Valenzuela*, No. cr-1102310002, 2022 WL 16635330, at *2 (D. Ariz. Nov. 2, 2022) (collecting cases holding that a court cannot credit claims that are not supported by the defendant's medical record). Rodriguez's CML has been in molecular remission since mid-2021, and he stopped taking the chemotherapy medication—which caused much of his pain—in June 2023. ECF No. 73 at 2 (under seal). In August 2023, about three months after stopping the medication, he stated to a doctor in the oncology unit that he was "doing well overall off therapy." *Id.* The same medical report listed that he was not experiencing weakness, fatigue, or night sweats, *id.*, and his Reply states that his dizziness and nausea have somewhat subsided. ECF No. 78 at 4. While Rodriguez continues to suffer chronic pain and stiffness, ECF No. 78 at 4, which the Court acknowledges may sometimes be quite serious, these conditions do not rise to the level of extraordinary and compelling reasons to reduce a sentence. Rodriguez has not shown that his medical conditions "substantially diminish[] [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover." U.S.S.G. 1B1.13(b)(1)(B).

This Court has previously held that cancer in remission is insufficient on its own to amount to an extraordinary and compelling reason. *United States v. Lara*, No. 14-cr-215-5-GPC, 2021 WL 1839985, at *4 (S.D. Cal. May 7, 2021) (collecting cases). Here, even combined with Rodriguez's other medical conditions, his CML in remission does not rise to the level of extraordinary and compelling. Rodriguez's hypertension, high cholesterol, hemorrhoids, and hyperlipidemia are managed with daily medication, and he does not claim that they cause serious symptoms. ECF No. 78 at 4; ECF No. 70 at 38-39 (under seal). Most defendants who receive compassionate release primarily for medical reasons have more serious active conditions, *see, e.g.*, *United States v. Rodriguez*, 424 F. Supp. 3d 674, 682 (N.D. Cal. 2019) (collecting cases and denying compassionate relief to a paraplegic who needed assistance with day-to-day activities), or were particularly at risk

during the height of the COVID-19 pandemic, *see, e.g.*, *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (granting compassionate release to a defendant with chronic obstructive pulmonary disease and emphysema in March 2020).

Nor has Rodriguez shown that he is suffering from a condition "that requires long-term or specialized medical care that is not being provided." U.S.S.G. 1B1.13(b)(1)(B). He received daily chemotherapy medication, though not always in the preferred brand, until he and an oncologist agreed that he would stop taking the medication. *See* ECF No. 70 at 14, 18, 31 (under seal). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ But because Rodriguez has been consistently receiving treatment and is continuing to be subject to monitoring, "the Court is not persuaded that Defendant's health conditions and the BOP's management of those conditions warrant compassionate release." *United States v. Morales*, No. 117-cr-00137, 2023 WL 199176, at *3 (E.D. Cal. Jan. 17, 2023) (denying compassionate release to a defendant with diabetes, loss of the use of his right arm, nerve damage, Dupuytren's contracture, ringworm, hyperlipidemia, chronic obstructive pulmonary disease, and joint pain).

The other factors Rodriguez raises are insufficient, even considered collectively with his medical conditions, to show extraordinary and compelling reasons because they only marginally support his arguments for release. *See* ECF No. 78 at 2-3 (listing factors). His age of 65 indicates that he is less likely to be a danger to the community but it adds little that is not already demonstrated by his medical conditions, ECF No. 65 at 14-16, and he has not served enough time in prison for his age to constitute an

extraordinary and compelling reason on its own, U.S.S.G. 1B1.13(b)(2) (requiring a defendant have served at least 10 years or 75 percent of his term). Further, while custodial conditions were especially harsh during the COVID-19 pandemic and continue to be harsher than they were previously, "such conditions apply to most, if not all, inmates under the BOP's purview" and only slightly favor release. *United States v. Wright*, No. 19-cr-4286-GPC, 2022 WL 673265, at *3 (S.D. Cal. Mar. 7, 2022). Finally, Rodriguez contends that he has significantly rehabilitated and will have family support upon release. ECF No. 78 at 3; ECF No. 65-1 at 99, 105. But there is no evidence of rehabilitation in the record other than his lack of disciplinary history in prison, ECF No. 65-1 at 64; ECF No. 65 at 24, and the support of his family does not cause the court to grant release where it would not otherwise.

The Court therefore holds that Rodriguez has not shown extraordinary and compelling reasons to justify a sentence reduction. Because the Court finds that Rodriguez has not presented extraordinary and compelling reasons, it does not reach whether he presents a danger to the community, U.S.S.G. 1B1.13(a)(2), or the section 3553(a) sentencing factors.

## CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 2, 2024

Hon. Gonzalo P. Curiel
United States District Judge